## MATTER OF GALLARES

### In Deportation Proceedings

### A-19662566

*Decided by Board December 29, 1972*

The beneficiary of an approved third preference visa petition who, pending availability of a visa number, was permitted to remain in the United States until further notice upon the condition of retention of third preference status, received, at most, an open-ended voluntary departure opportunity and not an irrevocable right or privilege to remain here indefinitely. Respondent, through his subsequent marriage to such a third preference beneficiary, could succeed derivately to no greater rights; he remains deportable under sections 241(a)(2) and (9) of the Immigration and Nationality Act despite his marriage.*

CHARGES:

Order: Act of 1952—Section 241(a)(9) [ 8 U.S.C. 1251(a)(9)]—Failed to comply with the conditions of nonimmigrant status—student.

Lodged: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer than permitted as nonimmigrant student.

ON BEHALF OF RESPONDENT:
Dan P. Danilov, Esquire
3828 Seattle-First National
  Bank Building
Seattle, Washington 98104

ON BEHALF OF SERVICE:
William L. Pattillo
District Director

This matter is before the Board on what appears to be an untimely appeal from an order of a special inquiry officer dated September 21, 1972, finding the respondent deportable and granting him until October 22, 1972 to depart voluntarily. Present counsel for respondent has also filed a motion to reopen and reconsider. To avoid any question as to our jurisdiction to consider respondent's case on the merits, we shall take the case on certification under 8 CFR 3.1(c) and enter an appropriate order.

Respondent is a 35-year-old male alien, native and citizen of the Philippines, who was admitted to the United States on or about June 3, 1971 as a nonimmigrant visitor for business. His nonimmigrant status was thereafter on July 15, 1971 changed to that of a

---

* See also, *Matter of Merced,* Interim Decision No. 2273 (BIA, 1974).

student to permit him to attend the Loyola University of the South at New Orleans and he was authorized to remain here in that status until July 15, 1972. On January 17, 1972, the Service's District Director at Portland, Oregon received from respondent an application for permission to transfer to the University of Portland. The application recited that he had last attended Loyola University on December 20, 1971 and was then attending Portland University in evening classes 12 hours a week. On January 28, 1972, respondent filed an application for adjustment of status to that of permanent resident under section 245 of the Immigration and Nationality Act. On April 14, 1972 the District Director denied respondent's section 245 application and, concluding that he had violated his student status, gave him until May 14, 1972 to depart voluntarily without the institution of deportation proceedings. He failed to depart and an order to show cause in deportation proceedings was issued, charging that he was deportable under section 241(a)(9) of the Act for having failed to comply with the conditions of his student status by accepting unauthorized employment and by transferring to the University of Portland without Service permission. At the deportation hearing, an additional charge was lodged under section 241(a)(2) of the Act, charging that respondent had remained longer than permitted after his section 245 application had been denied and he had been given until May 14, 1972 to depart.

The deportation hearing was held at Portland, Oregon and respondent was there represented by Gerald H. Robinson, Esquire, an experienced immigration lawyer. Respondent renewed his section 245 application but later withdrew it when he was unable to establish the requisite visa eligibility. On July 18, 1972 the District Director denied respondent's application for a one-year extension of his temporary stay. At the deportation hearing respondent requested reinstatement to his student status.

On September 21, 1972 the special inquiry officer entered his order. He concluded that he lacked power to reinstate respondent to his student status. The unauthorized employment charge was found not sustained by the evidence. The special inquiry officer concluded, however, that both the section 241(a)(9) charge in the order to show cause and the lodged section 241(a)(2) charge were sustained, finding that respondent had violated the terms of his student status by his unauthorized transfer to the University of Portland and had abandoned his student status when he filed his section 245 application. The special inquiry officer granted voluntary departure to October 22, 1972, with provision for an alternate order of deportation to the Philippines if respondent failed to depart. A copy of the special inquiry officer's order was mailed to

respondent's attorney, Mr. Robinson. No copy was sent to the respondent. On October 16, 1972, a form letter was mailed to respondent, notifying him that he must depart by October 22, 1972. On October 19, 1972 the District Director extended the departure time to October 29, 1972.

In the meantime, respondent retained his present attorney, whose office is in Seattle, Washington. On October 25, 1972 counsel filed with the District Director at Portland a notice of appeal to this Board from the special inquiry officer's decision and requested the District Director not to execute the alternate order of deportation pending action by this Board on the appeal. The District Director issued a warrant of deportation and directed respondent to surrender for deportation on November 9, 1972. On November 2, 1972, counsel sent us a copy of a motion he had filed for reopening and reconsideration. The motion, which is supported by affidavit, recites that on September 14, 1972 respondent married Charito C. Pedro, a native of the Philippines and a citizen of Canada, who is the beneficiary of a third preference visa petition approved March 21, 1972. In the letter of that date notifying Miss Pedro (then unmarried) of the approval, the District Director advised her that as an immigrant visa was not yet available and she was therefore ineligible to apply for section 245 adjustment, she was permitted to remain in the United States until further notice, conditioned upon her retention of her third preference status. The notice further stated *pro forma* that the permission granted to remain in the United States applies also to her spouse and children, if any.

The District Director opposes the appeal as untimely, citing 8 CFR 242.21. He also contends that service of the special inquiry officer's order on Mr. Robinson, respondent's then attorney, without also serving respondent himself, is sufficient to comply with the requirements of 8 CFR 292.5. In support of his contention that the notice of appeal should be considered as filed timely, counsel for respondent asserts that it has been the unvarying practice of the Service in the Portland District to serve not only the attorney but also the alien. This contention is supported by the affidavit of Mr. Robinson, respondent's former attorney.

Both in his notice of appeal and in his motion papers, counsel takes the position that respondent's status has been altered by his marriage to Miss Pedro. He argues, in effect, that as her spouse respondent is the beneficiary of the March 21, 1972 grant of permission to her spouse to remain here with her. In order that we might give mature consideration to this claim, on November 7, 1972 we stayed deportation pending further order of this Board. The record before us does not contain a transcript of the hearing before the special inquiry officer and we have been informed that

because of mechanical difficulty no transcript can be made. We have concluded that we can decide the merits of the case without it.

We need not ascertain what in fact was the unvarying practice in the Portland District, nor need we rule on the timeliness of the attempted appeal. In order that we may do justice to the respondent without regard to possibly difficult jurisdictional problems, we shall take this case on certification under 8 CFR 3.1(c).

From the undisputed facts of record, we are satisfied that respondent's deportability has been established by clear, convincing and unequivocal evidence. We agree with the special inquiry officer that he lacked power to reinstate respondent to his student status, *Matter of Sourbis,* 11 I. & N. Dec. 335 (BIA, 1965). Indeed, from the notice of appeal filed by present counsel, it does not appear that deportability is seriously questioned, except in relation to the factors raised in the motion to reopen, which we discuss next.

The motion to reopen asserts, in substance, that respondent's marriage on September 21, 1972 to Charito C. Pedro "has a substantial effect upon the Decision in this case." We think not. We need not determine whether, by his marriage to Miss Pedro, respondent became automatically endowed with whatever rights or privileges, if any, were granted to her unnamed and as-yet-unascertained "spouse" by the Service's letter of March 21, 1972. Assuming, arguendo, that on his marriage respondent succeeded to those rights and privileges, they could not in any event exceed those conferred on the then Miss Pedro herself. What she received was, at most, an open-ended voluntary departure opportunity and not an irrevocable right or privilege to remain here indefinitely.

As a nonimmigrant who had sought to become a permanent resident under section 245, Miss Pedro had ceased to maintain her valid nonimmigrant status and had become deportable. In approving her visa petition, the District Director informed her that she would be permitted to remain in the United States until further notice, pending availability of a visa number. In doing this, the District Director conferred on her no irrevocable right or privilege of remaining here permanently. All he did was to refrain temporarily from instituting deportation proceedings against a deportable alien, an exercise of prosecutive discretion which is committed exclusively to the Service's enforcement officials and which neither we nor the special inquiry officers may review, *Matter of Geronimo,* 13 I. & N. Dec. 680 (BIA, 1971). Approval of a visa petition conveys no vested right to remain, *Matter of Li,* 13 I. & N. Dec. 629 (BIA, 1970). The courts have endorsed our view that a Service policy of lenity with respect to beneficiaries of approved

visa petitions confers no immutable rights generally and certainly no enforceable right to remain here permanently, *Armstrong* v. *INS*, 445 F.2d 1395 (C.A. 9, 1971); *Vassiliou* v. *District Director*, 461 F.2d 1193 (C.A. 9, 1972); *Discaya* v. *INS*, 339 F. Supp. 1034 (N.D. Ill., 1972). In net effect, all that Miss Pedro obtained from the District Director's letter of March 21, 1972 was the privilege, as a deportable alien, of departing voluntarily without the institution of deportation proceedings, with no terminal date for departure fixed as yet. In marrying her thereafter, respondent could succeed derivatively to no greater rights.

The special inquiry officer granted respondent the privilege of voluntary departure, the maximum form of discretionary relief for which he was then or is now eligible. If we restore that privilege to him now, he can have no cause for complaint. We shall leave it to the District Director to fix the departure time, taking into account the situation of the respondent's wife and the Service's enforcement policies generally pertinent to such a situation.

**ORDER:** The decision of the special inquiry officer is affirmed, insofar as concerns the adjudication of respondent's deportability.

*Further order:* The outstanding order and warrant of deportation are withdrawn, and the respondent is permitted to depart voluntarily from the United States within such time and under such conditions as may be fixed by the District Director; and upon failure of the respondent so to depart when and as directed, the respondent shall be deported as provided in the special inquiry officer's order.