981 F.2d 1251
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ainsley A. KING, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-1728.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: December 4, 1992
Decided: December 18, 1992
 
 On Petition for Review of an Order of the Immigration and Naturalization Service.
 Harry Jacques Trainor, Jr., Christopher L. Hamlin, Greenan, Walker, Steuart, Trainor & Billman, Landover, Maryland, for Petitioner.
 Stuart M. Gerson, Assistant Attorney General, Robert Kendall, Jr., Assistant Director, Donald E. Keener, United States Department of Justice, Washington, D.C., for Respondent.
 B.I.A.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Ainsley Anthony King appeals from a decision of the Board of Immigration Appeals (Board) ordering him deported and denying his application for waiver of inadmissibility to the United States under the Immigration and Nationality Act (Act), 8 U.S.C.s 1251(a)(4) (1988) (current version at 8 U.S.C.A. § 1251(a)(2)(A)(ii) (West Supp. 1992)), 8 U.S.C. § 1251(a)(14) (1988), and 8 U.S.C.A. § 1182(c) (West Supp. 1992). Finding no error in the Board's decision, we affirm.
 
 
 2
 King is a male native and citizen of Trinidad who was admitted to the United States as a lawful permanent resident on January 13, 1988. He was charged under separate indictments with the commission of two armed robberies that occurred in Prince George's County, Maryland, on October 29 and November 3, 1988. King ultimately was convicted of robbery with a deadly weapon, use of a handgun in the commission of a crime of violence, assault with intent to murder, and attempted robbery. King received a sixteen-year prison term with eight years suspended.
 
 
 3
 In April 1990 King was served with an order charging him with deportability under § 1251(a)(4) and § 1251(a)(14) of the Act.* King appeared with counsel at a deportation hearing held before an immigration judge at the Maryland Correctional Facility in February 1992. King admitted the truth of the factual allegations contained in the deportation order, but argued that because the two robberies were committed within a short period of time by the same individuals in the same manner, both robberies were part of a "single scheme" of criminal conduct. King testified, however, that neither of the two robberies was preplanned or part of a scheme.
 
 
 4
 In an oral decision, the immigration judge found King deportable and denied a waiver of deportation under § 1182(c) of the Act. King appealed to the Board. The Board dismissed the appeal, finding that the Government had proved by clear, unequivocal, and convincing evidence that the two robberies involved moral turpitude and did not arise out of a single scheme of criminal misconduct.
 
 
 5
 We must uphold the factual findings supporting the Board's determination of deportability if they are supported by reasonable, substantial, and probative evidence. 8 U.S.C.A. § 1105a(a)(4) (West 1970 & Supp. 1992); 8 U.S.C.A. § 1252(b)(4) (West 1970 & Supp. 1992); Woodby v. INS, 385 U.S. 276, 281-84 (1966); Mortazavi v. INS, 719 F.2d 86, 87 (4th Cir. 1983). To reverse the Board's decision under the substantial evidence standard, an alien must show that the evidence presented was so compelling that no reasonable factfinder could fail to find in his favor. INS v. Elias-Zacarias, 60 U.S.L.W. 4130 (U.S. 1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20 (1966).
 
 
 6
 The Board reasoned that King had five days between crimes to reflect on what he had done and disassociate himself from the crimes. The Board considered King's own testimony that the crimes were not preplanned or part of a scheme. The Board then concluded that the Government had sustained its burden of proving by clear, unequivocal, and convincing evidence that King's crimes did not arise out of a single scheme of criminal misconduct. Absent a showing by King of compelling evidence in his favor, we must uphold the Board's decision. INS v. Elias-Zacarias, 60 U.S.L.W. at 4132. King made no such showing here. Because the Board did not err in concluding that King's crimes, separated by five days and related only by the method of commission and identities of participants, did not constitute a "single scheme," we uphold its determination unders 1251(a)(4).
 
 
 7
 King also contested his deportability under § 1251(a)(14) of the Act arising from his firearm conviction under Md. Ann. Code art. 27, § 36B(d) (1992). However, King failed to raise this challenge at his deportation hearing, thereby failing to preserve the issue for appeal. See Farrokhi v. INS, 900 F.2d 697, 700 (4th Cir. 1990). King's deportability for a firearms violation rendered him ineligible for a waiver of deportability under § 1182(c) of the Act, and the Board accordingly did not err when it denied his application.
 
 
 8
 Because we find no error in the Board's decision, we affirm. We dispense with oral argument because the facts and legal conten tions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Section 1251(a)(4) provides for deportation of any alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Section 1251(a)(14) authorizes deportation of any alien convicted of possessing or carrying any firearm or destructive device in violation of law